UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHELE WILLIAMS,

    Plaintiff,

v.

Case No. 07-14858
Hon. Lawrence P. Zatkoff

CITY OF DETROIT, ELLA
BULLY-CUMMINGS, and
ROOSEVELT TIDWELL,

    Defendants.

_____/

## OPINION AND ORDER

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on September 24, 2009

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

### I. INTRODUCTION

This matter is before the Court on Defendants City of Detroit ("City") and Chief of Police Ella Bully-Cummings' ("Bully-Cummings") [collectively, "Defendants"] motion for summary judgment [dkt 30]. The parties have fully briefed the motion. Following an extended discovery period, Plaintiff filed a supplemental brief and Defendants filed a responsive supplemental brief. The Court finds that the facts and legal arguments are adequately presented in the parties' papers such that the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. Mich. L.R. 7.1(e)(2), it is hereby ORDERED that the motion be resolved on the briefs submitted. For the following reasons, Defendants' motion is GRANTED.

### II. BACKGROUND

Defendant Roosevelt Tidwell ("Tidwell") graduated from the police academy in November 1995 and began his employ with the Detroit Police Department at that time. Tidwell worked in various precincts as his career progressed. In February 2004, Tidwell was promoted to the rank of sergeant. Additionally, Tidwell had served in the United States Army since 1985, and twice took leave from the police department to fulfill his military obligations. The first period of military leave began in October 2002 for a period of five months, and the second commenced in April 2004 for a one-year period.

Tidwell's first contact with Plaintiff occurred in November 2006.[1] While patrolling a park, Tidwell approached a vehicle in which Plaintiff and a companion were situated. Plaintiff's and Tidwell's accounts of the incident diverge, but both parties agree that Tidwell gave Plaintiff a ride home in his patrol car. Plaintiff alleges that Tidwell requested that Plaintiff perform oral sex on Tidwell because Tidwell did not arrest or otherwise discipline Plaintiff and her companion for loitering in the park after hours. Plaintiff also states that Tidwell touched her breasts during the encounter. Tidwell denies that anything of a sexual nature transpired that night. The encounter ended with Plaintiff providing Tidwell her phone number and Tidwell returning Plaintiff to her home. The parties dispute whether Plaintiff provided her phone number freely or under threat of jail and/or arrest.

Tidwell frequently called Plaintiff's phone number over the next several months, met with Plaintiff on approximately 7-8 occasions, and he indicates that in January 2007, he and Plaintiff did

---

[1] The complaint states that this encounter was January 4, 2007. In her deposition, Plaintiff stated that she may have been confused when she originally noted that date, and that the first encounter was actually November 25, 2006. Tidwell's deposition corroborates the revised timeline.

have a single, consensual sexual encounter. While Plaintiff agrees that she met with Tidwell approximately 7-8 times, she represents that all but two meetings involved compelled sexual acts. Plaintiff did not initially report any of these encounters to the police.

On February 7, 2007, a complaint was filed with the City concerning an unidentified officer who gave the complainant a choice of having a passenger perform a sexual act on the complainant or facing arrest and/or a $500 ticket. *See* Defs.' Mot. Summ. J. Ex. F. The unidentified officer also requested the complainant's phone number under threat of jail. *See id*. Two phone recordings between the complainant and the implicated officer were provided to the City. The officer was later identified via the phone recordings as Tidwell, and the complaint was assigned for investigation by the Internal Affairs Department on February 14, 2007. *See* Pl.'s Supp. Br. Ex. 4. In his deposition, Tidwell testifies that he was unaware that he was under investigation.

On April 14, 2007, a second complaint was lodged with the City alleging that an unidentified police officer requested that the occupants of a vehicle perform sexual acts on each other to avoid arrest. *See* Defs.' Mot. Summ. J. Ex. G. This complaint was also assigned to Internal Affairs for investigation. *See* Pl.'s Supp. Br. Ex. 6. According to an internal memorandum, the complainants identified the officer as Tidwell from a photo line-up. *See id*. Following this complaint, Tidwell was suspended on April 15, 2007. *See* Pl.'s. Supp. Br. Ex. 5. On April 18, 2007, Bully-Cummings approved a memorandum recommending that Tidwell remain suspended pending all investigations. *See id*. The memorandum also indicated that Tidwell remained under investigation for the February 7, 2007, complaint. *See id*.

On April 27, 2007, Plaintiff contacted the City and filed a complaint detailing her encounters with Tidwell over the previous several months. At her deposition, Plaintiff testified that she chose

3

to come forward in part due to a phone call from Tidwell's wife, who instructed Plaintiff to leave Tidwell alone. Plaintiff stated that she felt threatened and in danger at that point, and she filed her complaint after consultation with her attorney. This was the first time Plaintiff had alerted the City in any manner to Tidwell's alleged actions.

On November 13, 2007, Plaintiff filed this lawsuit in federal court against Tidwell, the City, Bully-Cummings, and three John Doe intermediary supervisors, alleging that Tidwell's sexual misconduct violated her constitutional rights protected by 42 U.S.C. § 1983. Thereafter, Plaintiff moved to amend her complaint and name the John Doe supervisory officers. The Court denied Plaintiff's motion, finding that Plaintiff had not stated a claim of supervisor liability under § 1983 as to those defendants.[2] The City and Bully-Cummings now move for summary judgment.

### III. LEGAL STANDARD

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Thompson v. Ashe*, 250 F.3d 399, 405 (6th Cir. 2001). The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact, and all inferences should be made in favor of the nonmoving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

To support its motion, the moving party may show "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Although all inferences must be drawn in favor of the nonmoving party, this Court bears no obligation to imagine favorable facts where the

---

[2]Plaintiff continues to refer to the John Doe defendants in her supplemental brief. To the extent that the Court's order denying leave to amend complaint did not dismiss the claims against any unnamed defendants, the Court now dismisses those claims.

4

nonmoving party has alleged none. The moving party must also set forth facts sufficient to establish its case: "[T]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## IV.  ANALYSIS

Defendants insist that the City is entitled to summary judgment because Tidwell was not acting pursuant to a custom or policy of the City and because municipal liability cannot attach on the basis of *respondeat superior*. Defendants further contend that Plaintiff has not alleged any personal involvement on behalf of Bully-Cummings, and that she is otherwise entitled to qualified immunity.

Plaintiff presents several challenges to Defendants' motion. Plaintiff first asserts that Tidwell was not properly trained or supervised in his position as a sergeant. Further, Plaintiff alleges that a 1997 internal report and a 2003 consent judgment put the City on notice that its police officers regularly violate the civil rights of the public. Finally, in her supplemental brief, Plaintiff avers that the City had knowledge of Tidwell's alleged misconduct following the February 7, 2007, complaint, yet it allowed Tidwell to continue to serve as a sergeant without discipline or heightened supervision.

**A.  Defendant City and Defendant Bully-Cummings (Official Capacity)**

A municipality is not liable for constitutional violations under § 1983 on a theory of *respondeat superior*. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 692 (1978). It can, however, be responsible for a constitutional injury inflicted pursuant to a "policy or custom" that is the "moving force of the constitutional violation." *Id*. at 695. When an official or

express policy is not implicated, the plaintiff may still show "the existence of a widespread practice that . . . is 'so permanent and well settled as to constitute a custom or usage with the force of law.'" *City of St. Louis v. Praprotink*, 485 U.S. 112, 127 (1988) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–68 (1970)).  In addition, there must be a demonstrated "causal link between the municipal action and the deprivation of federal rights." *Bd. of County Comm'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 405 (1997).

When a plaintiff contends that a municipality failed to adequately train or supervise its employees, liability can only attach where that failure "amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989).  Deliberate indifference requires that a "municipal actor disregarded a known or obvious consequence of his action." *Brown*, 520 U.S. at 410.

### 1. Failure to Train

Unsurprisingly, there is no evidence on the record that the City has an official policy of promoting sexual misconduct.  Instead, Plaintiff contends that "there is a complete absence of any rule that recognizes and states sexual misconduct by police officers is prohibited." Pl.'s Resp. Defs.' Mot. Summ. J. at 5.  To the extent that Plaintiff premises *Monell* liability on the absence of a policy prohibiting such conduct, that argument fails to create a genuine issue of material fact. *See, e.g.*, *Mize v. Tedford*, No. 08-CV-10660-DT, 2009 WL 1508373, at *13 (E.D. Mich. May 29, 2009) ("Refraining from raping women in police custody is so obvious that even if [the City of] Flint were silent about such conduct, it would not give rise to a constitutional violation.").

Plaintiff next suggests that the City's failure to adequately train Tidwell as a sergeant is a sufficient basis for municipal liability.  Even if Tidwell did not complete all of the required training,

6

due to military leave or otherwise, or if the City's training program was deficient, numerous courts have concluded that a governmental entity or its officials are not required to train a police officer not to commit sexual misconduct. *See Lewis v. Pugh*, No. 6:06-CV-357, 2007 WL 1394145, at *6 (E.D. Tex. May 11, 2007), *aff'd*, 289 Fed. Appx. 767 (5th Cir. 2008) ("Indeed, it hardly seems necessary that an officer would require specific training to know that rape, sexual assault, and other blatantly criminal actions are inappropriate."); *Andrews v. Fowler*, 98 F.3d 1069, 1077 (8th Cir. 1996) ("[W]e cannot conclude that there was a patently obvious need for the city to specifically train officers not to rape young women."); *Breland v. City of Centerville, Ga.*, No. 5:07-cv-27(CAR), 2008 WL 2233595, at *3 (M.D. Ga. May 28, 2008) ("No training is required to teach police officers not to commit sexual assaults. Sexual assault is illegal, and police officers can reasonably be expected to know, without training, that they are not allowed to take sexual advantage of their prisoners."); *Williams v. Bd. of County Comm'rs of Unified Gov't of Wyandotte, Cty.*, No. 98-2485-JTM, 2000 WL 1375267, at *6 (D. Kan. Aug. 30, 2000) ("Here, the proper course of conduct—refraining from sexual assault and rape—is patent and obvious; structured training programs are not required to instill it.").

The Court agrees with the above reasoning, and finds that Tidwell required no training to refrain from sexual misconduct. Nor was it necessary that the City enact a specific policy prohibiting its officers from engaging in such conduct. To the extent that Tidwell did not complete the required training for a sergeant, or to the extent that the City's officer-training program is deficient, there is no causal connection to the alleged constitutional deprivation. *See Brown*, 520 U.S. at 405. Therefore, the City is entitled to summary judgment on Plaintiff's failure-to-train claim.

**2. Failure to Supervise**

Plaintiff next asserts that Tidwell was not adequately supervised as a sergeant because his daily time logs were rarely reviewed, he was not evaluated as frequently as required, and he was not questioned about incomplete time logs. Plaintiff contends that the frequent litigation in this district involving police officers employed by the City constitutes notice that its supervisory policies were insufficient. Plaintiff also cites the 1997 internal report and the 2003 consent judgment as evidence that the City knew that its supervision of officers was unsatisfactory and that its officers were depriving citizens of their constitutional rights.

Accepting Plaintiff's allegations as true, Plaintiff fails to demonstrate a causal connection between any lack of supervision—or, for that matter, any prior departmental constitutional violations—and the current constitutional deprivation. *See Brown*, 520 U.S. at 405. That is, Plaintiff is unable to show that any action or inaction by the City in the supervision of its officers was the "moving force" in Tidwell's alleged misconduct. *See Monell*, 436 U.S. at 695.

Recently, in *Mize*, the plaintiff alleged that the City of Flint's failure to provide any supervision of an investigator was the moving force behind the plaintiff's rape by that officer. The court granted summary judgment for the City of Flint, noting that "a jury could find that Flint's lack of supervision was negligent" but there was "no evidence creating a triable issue of fact that the plainly obvious result of Tedford's lack of supervision would be a sexual assault." *Mize*, 2009 WL 1508373, at *15–16; *see also Lewis*, 289 Fed. Appx. at 775 ("There is simply no evidence in the record that Pugh made the decision to rape Lewis for any reason related to any City policy or custom or understanding thereof which he may have had, or for any reason other than his own motivations for assaulting Lewis. . . . In sum, the evidence shows no causal connection between the City's allegedly unconstitutional policy and the actions of Pugh.").

8

Likewise, sexual misconduct was not the "plainly obvious result" of any failure on behalf of the City to supervise Tidwell. Further, despite Plaintiff's focus on past issues regarding the City's supervision of its officers, Plaintiff puts forth no evidence suggesting that any past supervisory shortcomings resulted in sexual misconduct. Accordingly, the City is entitled to summary judgment on this issue.

### 3. Failure to Discipline

Finally, Plaintiff questions the City's decision to allow Defendant Tidwell to continue to serve as an officer following the February 7, 2007, complaint. Plaintiff contends that the taped conversations submitted with the February 7, 2007, complaint put the City on notice that: (1) Tidwell did not fill out his daily reports; (2) Tidwell frequently approached vehicles and gave the occupants the choice of sexual activities or a ticket and/or jail time; (3) Tidwell had victimized women other than the complainant; and (4) Tidwell frequently and regularly contacted the victims via telephone or at their homes. Additionally, Plaintiff criticizes the City's overall history of handling citizen complaints.

The Court construes these allegations as asserting *Monell* liability on a failure-to-discipline theory. In order to sustain such a claim, Plaintiff must show that the City's failure to discipline Tidwell constituted "deliberate indifference to the rights of its citizens, which failure proximately caused [the constitutional violation]." *Berry v. City of Detroit*, 25 F.3d 1342, 1354 (6th Cir. 1994). This requires a "history of widespread abuse that has been ignored by the City." *Id.* (citing *City of Canton,* 489 U.S. at 397).

Plaintiff suggests that the single incident of not suspending Tidwell following the February 7, 2007, complaint suffices to show that the City was deliberately indifferent to Plaintiff's civil

9

rights, as two sexual encounters with Tidwell took place subsequent to that date. Even accepting this allegation, which finds no support in the record, as true, the Court cannot conclude that the failure-to-discipline standard has been met.

While Plaintiff generally cites the City's 1997 internal investigation, the 2003 consent judgment, and the City's handling of complaints, Plaintiff does not identify a single incident where a citizen complaint of sexual misconduct was ignored. *See Miller v. City of Columbus*, No. 2:05-CV-425, 2007 WL 915180, at *15 (S.D. Ohio, Mar. 26, 2007) ("Plaintiff must prove that the City had a policy or custom of failing to act upon *similar* complaints of unconstitutional conduct.") (emphasis added). Thus, Plaintiff has failed to show that a "history of widespread abuse" exists in handling citizen complaints of sexual misconduct.

Moreover, the City did not turn a blind eye to the complaint; rather, it immediately commenced an internal investigation. Even if the City's response to the February 7, 2007, complaint was negligent or reckless, that single instance does not infer that the City was deliberately indifferent in its investigation and discipline of officers. *See Thomas v. City of Chattanooga*, 398 F.3d 426, 433 (6th Cir. 2005); *Doe v. Claiborne County, Tenn.*, 103 F.3d 495, 508–09 (6th Cir. 1996).

For these reasons, summary judgment is appropriate on Plaintiff's failure-to-discipline claims.

### 4. Conclusion

Tidwell's actions, if proven, are reprehensible under any circumstances, let alone when committed by an officer sworn to protect the public. Plaintiff, however, has failed to show that Tidwell's actions were taken pursuant to a policy or custom attributable to the City. "To impose liability under [these] circumstances would be to impose it simply because the municipality hired

'one bad apple.'" *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 821 (1985). Therefore, the City is entitled to summary judgment on all claims.[3]

**B. Defendant Bully-Cummings (Individual Capacity)**

As Plaintiff's complaint included a discussion of qualified immunity, the Court assumes that Plaintiff intended to sue Bully-Cummings in her individual capacity as well. Plaintiff alleges that Bully-Cummings should be held liable for Tidwell's alleged misconduct because she: (1) promoted Tidwell to the position of sergeant, despite the fact that the former police chief had declined to promote him; (2) failed to implement and enforce policies and procedures due to her conflict of interest in supporting former-Mayor of Detroit Kwame Kilpatrick; (3) failed to ensure that Tidwell was properly supervised and trained; and (4) had at least constructive knowledge of the February 7, 2007, sexual misconduct complaint against Tidwell yet allowed him to continue serving as a police officer.

Defendants argue that Plaintiff has not alleged personal involvement on behalf of Bully-Cummings; therefore, Plaintiff's allegations are insufficient as a matter of law, as vicarious liability does not exist under § 1983. Alternatively, Defendants argue that Bully-Cummings is entitled to qualified immunity.

**1. Supervisor Liability**

Supervisor liability does not attach when supervisors are "sloppy, reckless, or negligent" in the performance of their duties. *Doe v. City of Roseville*, 296 F.3d 431, 439 (6th Cir. 2002). Instead, the Sixth Circuit enunciates the standard as follows:

---

[3]The Court notes that Plaintiff has previously agreed to dismiss Count V ("Consent Judgment Violation") of her complaint. *See* Pl.'s Resp. Defs.' Mot. Summ. J. at 16.

> [The] failure of a supervisory official to supervise, control, or train the offending individual officers is not actionable absent a showing that the official either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.

*Hays v. Jefferson County, Ky.*, 668 F.2d 869, 874 (6th Cir. 1982).

### 2. Failure to Train

As the Court has found that no training is necessary to prevent a police officer from committing sexual misconduct, *see* Part IV.A.1, *supra*, Bully-Cummings is entitled to summary judgment on the failure-to-train theory.

### 3. Failure to Supervise

"The same standards of fault and causation apply to an individual supervisor's liability and the liability of a municipality for failure to supervise." *Lewis*, 289 Fed. Appx. at 772. Thus, for the reasons discussed in Part IV.A.2, *supra*, Bully-Cummings is entitled to summary judgment on this issue.

### 4. Failure to Discipline

Plaintiff does not allege that Bully-Cummings had any personal involvement in the decision to not immediately suspend Tidwell. Notably, while Plaintiff presented evidence indicating that Bully-Cummings approved Tidwell's suspension following the second complaint of sexual misconduct, *see* Pl.'s Supp. Br. Ex. 5, there is no evidence that Bully-Cummings was involved in the decision to not immediately suspend Tidwell. To the extent that Bully-Cumming acquiesced in the decision not to suspend Tidwell, Plaintiff has not provided any case law holding an individual supervisory officer liable for investigating, rather than suspending, a single officer based on a single

complaint of misconduct.

For these reasons, and those enunciated in Part IV.A.3, *supra*, Bully-Cummings is not liable on a failure-to-discipline theory.

### 5. Other

Plaintiff's remaining claims against Bully-Cummings fail for lack of a causal connection to the alleged violations. The fact that Bully-Cummings promoted Tidwell to sergeant despite the former chief's decision against that action has no connection to the alleged sexual misconduct. Nor does any relationship with former-Mayor Kwame Kilpatrick. These allegations lack a basis in law and are dismissed.

### 6. Conclusion

In sum, there is no evidence that Bully-Cummings "at least implicitly authorized, approved, or knowingly acquiesced" in Tidwell's alleged misconduct. *See Hayes*, 668 F.2d at 874. As Plaintiff has not stated a viable constitutional violation attributable to Bully-Cummings, the Court need not complete the qualified immunity analysis. Bully-Cummings is entitled to summary judgment.

## V.  CONCLUSION

Accordingly, and for the above reasons, IT IS HEREBY ORDERED that Defendant City of Detroit and Ella Bully-Cummings' motion for summary judgment [dkt 30] is GRANTED. The only remaining claims in this matter are those against Defendant Tidwell.

IT IS SO ORDERED.

S/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF

UNITED STATES DISTRICT JUDGE

Dated:  September 24, 2009

CERTIFICATE OF SERVICE

    The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on September 24, 2009.

                                         S/Marie E. Verlinde
                                         Case Manager
                                         (810) 984-3290